IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| EXXONMOBIL OIL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 4278 |
| v. | ) ) | Judge Virginia M. Kendall |
| AMEX CONSTRUCTION COMPANY, INCORPORATED, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff ExxonMobil Oil Corporation ("Exxon") brought suit against Amex Construction Company, Incorporated ("Amex") under this Court's diversity jurisdiction alleging breach of warranty and negligence. Soon thereafter, Exxon filed a First Amended Complaint. Amex brought a Motion to Dismiss Exxon's First Amended Complaint, and rather than responding, Exxon filed a Second Amended Complaint. Amex then brought a Motion to Dismiss Exxon's Second Amended Complaint. For the reasons stated below, the Motion to Dismiss Exxon's Second Amended Complaint is denied and the previous motion is dismissed as moot.

**STATEMENT OF FACTS**

On or about May 26, 2003, Exxon entered into a Continuing Services Agreement ("CSA") with Amex. Sec. Amend. Cmplt. at ¶ 5. The CSA operated as a master contract covering all work, service, and materials provided to Exxon by Amex. *Id*. at ¶ 6. The CSA included certain warranties, representations and guarantees as to the quality, workmanship, and fitness for a particular purpose of the services and materials provided by Amex. *Id*. at ¶ 22.

1

Pursuant to the CSA, on March 5, 2004, Amex submitted a proposal to Exxon for the installation of a High Density Polyethylene ("HDPE") pipe to be used for water cooling at Exxon's Joliet Refinery. *Id.* at ¶ 7. On September 30, 2004, Exxon accepted Amex's proposal and placed a service order for the installation of the HDPE pipe and related services. *Id.* at ¶ 9. Amex began work on the installation of the HDPE pipe in November of 2004. *Id.* at ¶ 10. On or about June 2, 2005, Amex completed the installation and Exxon accepted the work and put the pipe into service. *Id.* at ¶ 11.

On July 30, 2005, approximately eight weeks after the final installation, a weld holding a thirty-six inch section of the HDPE pipe failed, causing the pipe to decouple. *Id.* at ¶ 12. Because of the failure of the HDPE pipe, the refinery's cooling system lost its water circulation, resulting in an emergency shutdown of various crude production and refining units, a shutdown of the gas turbine generator, and a slowdown of crude production and refining in other units of the refinery. *Id.* at ¶ 13.

The pipe failure also caused other property to be destroyed. *Id.* at ¶ 14. Approximately $900,000 in crude and hydrocarbons in various stages of production were burned during the emergency shutdown process and subsequent start-up process. *Id.* Various heat exchangers, pump seals, and other mechanical devices were also damaged. *Id.* at ¶ 15. Exxon states that the HDPE pipe failed because Amex failed to use reasonable care in its installation and its selection of materials. *Id.* at ¶ 27.

**STANDARD**

When considering Amex's motion to dismiss under Rule 12(b)(6), this Court accepts as true all facts alleged in the Second Amended Complaint and construes all reasonable inferences in favor

of Exxon. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a "short and plain statement of the claim showing that the pleader is entitled to relief" is all that is required. Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

### Breach of Warranty

Amex argues that Exxon has not adequately stated a claim for breach of warranty. First, it notes that the warranty provision in the CSA becomes effective only after Exxon accepts a given piece of work. As such, Amex argues that Exxon's statement in its Second Amended Complaint that it accepted the HDPE pipe installation "on or about June 5, 2005" is inadequate because it remains unclear whether Exxon accepted the work before the incident on July 30, 2005 and thus it remains unclear whether the warranty provision applied.

In order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See*, *Twombly*, 127 S.Ct. 1974. The complaint must "give the defendant fair notice of what the.... claim is and the grounds upon which it rests." *Id*. at 1964. No heightened pleading standard applies to breach of warranty claims.

3

Exxon states in its Second Amended Complaint that it accepted Amex's work on or about June 5, 2005. That is, it accepted the work before the July 30, 2005 incident. This is sufficient to state a claim for breach of warranty. If evidence comes forth during discovery indicating that Exxon did not accept the work prior to July 30, 2005, the issue can be dealt with at summary judgment.

Amex also argues that any claim for warranty relief related to defective materials or equipment should be dismissed because Exxon did not specifically allege what materials and equipment were provided by Amex. Again, the Federal Rules do not require Exxon to state its claims with this level of specificity at this point. Exxon clearly states that its warranty claims are based on various deficiencies in the execution of the installation of the HDPE pipe, and such deficiencies can be narrowed through discovery.[1]

**Negligence**

Amex argues that Exxon's negligence claim should be dismissed because Exxon seeks solely economic damages. Under Illinois law, a plaintiff seeking to recover purely economic losses due to defeated commercial expectations of a bargain cannot recover in tort. *In re Chicago Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997). Economic losses are "damages for inadequate value, costs of repair or replacement of the defective product, or consequent loss of profits - *without any claim of personal*

---

[1] Amex states in its Motion to Dismiss that Exxon provided all the materials for the installation of the HDPE pipe and suggests that the truth of this statement is apparent from the Second Amended Complaint. This Court declines to address matters outside the Second Amended Complaint, and it is unclear from the face of the Second Amended Complaint which party provided which materials. Amex stated in its proposal, attached as Exhibit B to the Second Amended Complaint, that all materials were to be furnished by Exxon. Sec. Amend. Cmplt. at Ex. B. However, Exxon's Scope of Work report, attached as Exhibit C, indicates in Paragraphs 1.3, 2.1, and 2.2 that Amex would furnish all materials. Sec. Amend. Cmplt. at Ex. C. Thus, Exxon does not preclude its breach of warranty claims based on the materials used in the construction.

4

*injury or damage to other property.*" *Id*. (*citing Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982)) (emphasis in original). This rule is based on a policy recognizing that qualitative defects are better handled by contract law, whereas damage resulting from a sudden or dangerous occurrence is better handled by tort law. *Id*. at 276. However, a plaintiff who has suffered personal injury or property damage as a result of a "sudden, dangerous, or calamitous" event may recover in tort. *Id*.

***Sudden and Dangerous Event***

When determining whether an event qualifies as a sudden and dangerous occurrence, courts assess the manner in which the damage at issue occurred with an eye to whether it occurred in a manner that posed an unreasonable risk of harm to persons or property. *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 436 (Ill.App. 2002) (*citing Stepan Co. v. Winter Panel Corp.*, 948 F.Supp. 802, 807-08 (N.D.Ill. 1996)).

Here, Exxon states that the decoupling of the HDPE pipe stopped water circulation to the refinery's cooling system, necessitating an emergency shutdown of various units within the refinery. Sec. Amend. Cmplt. at ¶ 13. Discovery may show that this event was neither sudden nor dangerous, but Exxon has sufficiently alleged facts establishing the occurrence of a sudden and dangerous event for this stage in the proceedings. *See*, *e.g.*, *Mercury Skyline Yacht Charters v. Dave Matthews Band*, No. 05 C 1698, 2005 WL 3159680, at *5 (N.D.Ill. 2005) (dumping of human waste on a tour boat was a sudden and dangerous event); *Muirfield Vill.-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, 810 N.E.2d 235, 249 (Ill.App. 2004) (mold infestation of house was a sudden and dangerous event); *Mars*, 763 N.E.2d at 436 (thunderstorm was a sudden and dangerous event); *Am. Xyrofin*, 595 N.E.2d at 672 (failure of compressor unit was a sudden and dangerous event); *Elec. Group, Inc. v.*

5

*Cent. Roofing Co., Inc.*, 518 N.E.2d 369, 371 (Ill.App. 1987) (sudden water leak in a roof was a sudden and dangerous event).

*Damage to Property*

Exxon must also sufficiently allege that the sudden and dangerous occurrence at issue resulted in personal injury or damage to "other" property. *Mars*, 763 N.E.2d at 466 (*citing Chicago Flood*, 680 N.E.2d at 275-76)). Damage to the product at issue itself does not suffice. *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 54-55 (Ill. 1997).

Here, Exxon alleges damage to heat exchangers, pump seals, and other mechanical devices involved in the production and refining of petroleum as well as damage to its inventory of crude and hydrocarbons in various stages of production. Sec. Amend. Cmplt. at ¶¶ 14-15. Amex argues that these damages are of the sort that one would reasonably expect as a consequence of the failure of the HDPE pipe and thus do not constitute "other property" damage. Discovery may well show this to be the case. However, again, at the motion to dismiss stage, Exxon has sufficiently alleged that the failure of the pipe caused damage to other property. *See*, *Trans States*, 682 N.E.2d at 59 (a product and one of its component parts may constitute two products); *Chicago Flood*, 680 N.E.2d at 276 (damaged inventory); *Am. Xyrofin*, 595 N.E.2d at 672 (damage to structure surrounding malfunctioning compressor constituted other property damage); *Dexter Axel Co. v. Omiotek Coil Spring Co.*, No. 00 C 28, 2000 WL 420856, at *1 (N.D.Ill., April 17, 2000) (damage to brake assembly when component adjustor wire spring malfunctioned constituted other property damage).

For the reasons stated above, Amex's Motion to Dismiss is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:  May 23, 2008