IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EXXONMOBIL OIL CORPORATION, a New York corporation, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 07 CV 4278 |
| AMEX CONSTRUCTION CO., INC., an Indiana corporation, | ) | Judge Kendall |
| | ) | Magistrate Judge Brown |
| Defendant/Third-Party Plaintiff, | ) | |
| ISCO INDUSTRIES, LLC, a Kentucky limited liability company, and AMBITECH ENGINEERING CORPORATION, an Illinois corporation, | ) | |
| Third-Party Defendants. | ) | |

**AMBITECH'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF AMEX'S EXPERT, NICHOLAS BIERY, PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

Third-Party Defendant, AMBITECH ENGINEERING CORPORATION ("Ambitech"), by and through its attorneys, FORAN GLENNON PALANDECH & PONZI PC, pursuant to Federal Rule of Evidence 702, moves for entry of an Order prohibiting Amex's expert, Nicholas Biery, from testifying at trial of this cause on certain subjects.

## BACKGROUND

ExxonMobil Oil Corporation ("ExxonMobil") seeks damages from Amex Construction Co., Inc. ("Amex") under breach of warranty and negligence theories in consequence of a plant shut-down caused by a failed weld in a High Density Polyethylene ("HDPE") pipe installed by Amex at ExxonMobil's Joliet refinery. (See ExxonMobil's Second Amended Complaint,

attached hereto as Exhibit A). The pipeline was temporary in character and was to be used for water cooling purposes (the "Project"). (Exhibit A, ¶ 7). Amex was contracted by ExxonMobil to install the HDPE pipe at its Joliet refinery. (Exhibit A, ¶ 9). The underlying loss at the ExxonMobil Joliet refinery occurred on July 30, 2005. (Exhibit A, ¶¶ 15 & 16). Approximately eight weeks after the installation of the HDPE pipe, a fused section joining two 36" pipe sections failed, causing limited property damage to and related economic loss at the ExxonMobil refinery. (Exhibit A, ¶ 12). Amex seeks contribution against ISCO Industries, LLC. ("ISCO"), the entity that sold the HDPE pipe to ExxonMobil, and Ambitech, which provides design and engineering services for industrial field piping, including HDPE pipe, and related services to petroleum refineries and heavy industry. (See Amex's Third-Party Complaint, attached hereto as Exhibit B).

**DR. NICHOLAS BIERY**

Dr. Nicholas Biery was retained by Amex to provide expert testimony with respect to the subject incident and HDPE pipe itself. (A copy of Dr. Biery's report ("Biery Report") is attached as Exhibit C.) In the Biery Report, Dr. Biery expressed, *inter alia*, the following opinions and conclusions:

1. The use of thinner-walled HDPE pipe than that required by ASME B31.3 contributed to the failure by reducing the margin of safety in the pipe joint that leaked;
2. A pipe joint with the wall thickness required by ASME B31.3 would have been subject to lower stresses and would most likely have had a longer life;
3. Ambitech's piping design used an incorrect wall thickness;

4. ExxonMobil reviewed the design basis and did not check that the wall thickness calculation for the HDPE pipe was correct.

As demonstrated in his deposition, attached as Exhibit D, and as explored, *infra,* Dr. Biery's conclusions are unreliable and are not based on reliable, scientific, verifiable methodology. Accordingly, Dr. Biery should be prohibited from testifying at trial on those matters.

## LEGAL ARGUMENT

Ambitech challenges Dr. Biery's report and anticipated testimony on several grounds. Dr. Biery should be barred from offering expert testimony regarding the alleged insufficient wall thickness of the HDPE pipe because (a) his methodology is flawed given that he could not independently verify that the allegedly insufficient wall thickness of the HDPE pipe caused or contributed to the pipeline failure, (b) he did not conduct any scientific testing to substantiate the opinion that a thinner-walled HDPE pipe allegedly required by ASME B31.3 would have reduced the likelihood of failure, and did not offer anecdotal evidence of the same. In fact, Dr. Biery did not provide any anecdotal evidence in support of that contention. As such, his opinions are inadmissible as they fail to assist the trier of fact in understanding the evidence or determining a fact at issue.

As the Supreme Court has noted, "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (citations omitted). Because of this risk, trial judges are charged with the responsibility of acting as gatekeepers to exclude unreliable expert witness testimony. Id. at 597; *Dhillon v. Crown Controls Corp*., 269 F.3d 865, 869 (7th Cir. 2001) (emphasizing trial court's "gatekeeper" role). *Daubert* sets forth five non-exhaustive factors that courts may use as

a guide: "(1) whether the particular scientific theory 'can be (and has been) tested'; (2) whether the theory 'has been subjected to peer review and publication'; (3) the 'known or potential rate of error'; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved a 'general acceptance' in the relevant scientific or expert community." *Deputy v. Lehman Bros., Inc.,* 345 F.3d 494, 505 (7th Cir. 2003), quoting *Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786. The party offering the expert testimony has the burden of establishing that the proffered testimony satisfies each of the *Daubert* requirements. *Otis v. Doctor's Associates, Inc.*, No. 94 C 4227, 1998 WL 673595, 4 (N.D. Ill Sept. 14, 1998) [FN2] *Schmaltz v. Norfolkv. W. Ry. Co*., 878 F.Supp. 1119, 1120 (N.D. Ill. 1995). Rule 702, amended in 2000 to reflect the Supreme Court's decision in *Daubert*, sets forth the test for determining the admissibility of proposed expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
> Fed. R. Evid. 702

Accordingly, to be admissible, the expert must possess "sufficient specialized expertise to render his opinion on the topic ... reliable, as required by *Daubert*." *Ty, Inc. v. Publications Int'l, Ltd.*, 2004 WL 2359250, 5 (N.D. Ill. Oct. 19, 2004); *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) (expert testimony must be "tested to be sure that the person possesses genuine expertise in a field"). The Court must then determine whether the expert's testimony is reliable, "that is, whether it is based on a reliable methodology." *Clark v. Takata Corp*., 192 F.3d 750, 756 (7th Cir. 1999). Finally, the proffered testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. Id. at 757; *O'Conner v. Commonwealth Edison Co.*,

13 F.3d 1090, 1106 (7th Cir. 1994) (second prong of the *Daubert* test is determining whether the expert opinion will assist the trier of fact). The burden is on the party offering the expert testimony to establish its admissibility. See Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

Here, with respect to his opinions regarding the insufficient wall thickness in the subject HDPE pipe, Dr. Biery qualified his testimony in the following respects:

- He has no experience with the fusion of HDPE piping; (Exhibit D, p. 67, lines 19-22)
- He did not conduct any finite element analysis to confirm these opinions; (Exhibit D, p. 30, lines 15-22)
- He did not conduct any computer modeling to confirm his conclusions; (Exhibit D, pp. 30-31, lines 23-2)
- He did not conduct any small-scale tests; (Exhibit D, p. 31, lines 3-5)
- He did not conduct any large-scale tests; (Exhibit D, p. 31, lines 6-8)
- He did not attempt in any way to replicate the piping joint that failed; (Exhibit D, p. 31, lines 9-11)
- He did not conduct any computer modeling of the piping joint that failed; (Exhibit D, p. 31, lines 12-14)
- He did not conduct any computer analysis of how a thicker-walled HDPE pipe would have reacted to the plant operating conditions that existed at the time of the failure; (Exhibit D, p. 31, lines 20-24)
- He did not conduct any finite element analysis of a thicker-walled HDPE pipe; (Exhibit D, p. 32, lines 1-6)

- He did not conduct any small-scale tests of a thicker-walled HDPE pipe; (Exhibit D, p. 32, lines 7-11)
- He did not contact Centro Sviluppo Materiali ("CSM") to see if they could apply their software to the HDPE pipe that failed and create a computer model of the stresses and strains on the pipe as it existed prior to failure; (Exhibit D, p. 32, lines 15-20)
- He did not contact CSM or any other company and have them do a computer analysis of how the thicker-walled pipe would have performed given plant operating conditions; (Exhibit D, pp. 32-33, lines 21-2)
- He did not take thicker diameter pipe and subject them to any type of burst testing or real-world experiment to see how a thicker-walled pipe with defective geometry would have operated; (Exhibit D, p. 33, lines 3-14)
- He did not know the plant operating conditions which were experienced by the HDPE by-pass line, and he has no information that would suggest that the water pressure and temperature in the HDPE by-pass exceeded the pipe's capacity; (Exhibit D, pp. 81-82, lines 17-6)
- He did not offer any evidence, scientific or anecdotal, that thicker-walled HDPE pipe would have been less likely to fail under the conditions that existed at the time of the failure. (Exhibit D, pp. 60-61, lines 8-24, 1-10)

As the foregoing demonstrates, Dr. Biery did not conduct scientific testing in order to credibly opine that the reduced wall thickness of the HDPE pipe increased stress in the pipe joint and made the HDPE line more susceptible to failure. Indeed, Dr. Biery had no information that the allegedly insufficient pipe design (i.e., not in concert with the ASME 31.3 standards) contributed to the failure as he had no knowledge of the actual plant operating conditions at any

time before or when the HDPE by-pass failed. Dr. Biery did not scientifically verify that a thicker-walled pipe would survive longer than the pipe used on the Project. Accordingly, his opinions regarding wall thickness are not relevant as they fail to assist the trier of fact. As such, pursuant to Federal Rule of Evidence 702, Dr. Biery should be prohibited from testifying to the following opinions:

1. The use of thinner-walled HDPE pipe than that required by ASME B31.3 contributed to the failure by reducing the margin of safety in the pipe joint that leaked;
2. A pipe joint with the wall thickness required by ASME B31.3 would have been subject to lower stresses and would most likely have had a longer life;
3. Ambitech's piping design used an incorrect wall thickness;
4. ExxonMobil reviewed the design basis and did not check that the wall thickness calculation for the HDPE pipe was correct.

## CONCLUSION

Since Dr. Biery failed to conduct any scientific tests to verify his conclusions regarding the thickness of the wall of the HDPE pipe, and because Dr. Biery did not know the actual operating conditions of the line when it failed, he should not be allowed to testify that the wall of the chosen HDPE pipe was too thin or that the alleged thinner pipe caused or contributed to the failure. These conclusions are purely speculative and do not assist the trier of fact in understanding the evidence or determining a fact in issue.

WHEREFORE, Defendant, AMBITECH ENGINEERING CORPORATION, prays for entry of an Order prohibiting Amex's expert, Nicolas Biery, from testifying at trial of this cause

regarding any conclusions and/or opinions with respect to the HDPE wall thickness and for such other and further relief as may be deemed just and proper.

Respectfully submitted,

FORAN GLENNON PALANDECH & PONZI

By: /s/ Douglas J. Palandech
Douglas J. Palandech

Douglas J. Palandech
C. Zachary Ransel
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive, Suite 1100
Chicago, Illinois 60606
Atty. No. 2135388
Phone 312-863-5000
Fax 312-863-5099
Attorneys for Ambitech Engineering Corporation

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court (with a copy to be mailed to any individuals who do not receive electronic notice from the Clerk) this 16th day of July 2009 to:

Dennis J. Cotter
David A. Johnson
SmithAmundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, IL 60601

Frank P. Andreano
Brumund, Jacobs, Hammel & Andreano LLC
58 East Clinton, Suite 200
Joliet, IL 60432

David M. Holmes
John C. Hunter
Dean M. Athans
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
120 N. LaSalle Street, Suite 2600
Chicago, IL 60602

/s/ Douglas J. Palandech
Douglas J. Palandech

Douglas J. Palandech
C. Zachary Ransel
Foran Glennon Palandech & Ponzi PC
150 South Wacker Drive, Suite 1100
Chicago, Illinois 60606
Atty. No. 2135388
Phone 312-863-5000
Fax 312-863-5099
Attorneys for Ambitech Engineering Corporation